```
 1                        UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF NEW YORK
 2
                                           )
 3    MA ZENIF E. INTAL,                   )   No. 1:18-cv-03196-SJ-JRC
                                           )
 4                      Plaintiff,         )   Brooklyn, NY
                                           )   July 8, 2021
 5                  vs.                     )
                                           )
 6    ERIE AGUSTIN, M.D. PRIMARY           )
      CARE, P.C. ET AL,                     )
 7                                          )
                        Defendants.         )
 8

 9                     TRANSCRIPT OF CHEEKS HEARING
                     BEFORE THE HONORABLE JAMES R. CHO
10                    UNITED STATES MAGISTRATE JUDGE

11    APPEARANCES (all appearances by audio or video):

12    For the Plaintiff:        DOUGLAS B. LIPSKY, ESQ.
                                MILANA DOSTANITCH, ESQ.
13                              LIPSKY LOWE LLP
                                420 Lexington Avenue, Suite 1830
14                              New York, NY 10170-1830

15
      For the Defendants:       MICHAEL K. CHONG, ESQ.
16                              ALEXIA BUTOW, INTERN
                                LAW OFFICES OF MICHAEL K. CHONG,
17                              LLC
                                2 Executive Drive, Suite 240
18                              Fort Lee, NJ 07024

19    ECR OPERATOR:             COURT PERSONNEL

20
                       Amanda G. Stockton, CET**D-1323
21                              eScribers
                          7227 North 16th Street
22                          Phoenix, AZ 85020
                            www.escribers.net
23
      Proceedings recorded by electronic sound recording; transcript
24    produced by transcription service.

25
```



1                              I N D E X

2   RULINGS:                                      PAGE   LINE
    Settlement agreement of parties approved.       8     13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

Colloquy

```
 1              THE COURT:  Hi.  Good morning, everyone.  It's Judge
 2    Cho.  We're hearing for a Cheeks hearing in Intal v. Erie
 3    Agustin, case number 18-CV-3196.
 4              Can the parties state their appearances for the
 5    record, starting with plaintiff?
 6              MR. LIPSKY:  Good morning, Your Honor.  Doug Lipsky
 7    and Milana Dostanitch of Lipsky Rowe for the plaintiff.
 8              THE COURT:  Good morning.
 9              And for defendant?
10              MR. CHONG:  Good morning, Your Honor.  Michael Chong
11    for defendants and my summer intern, Alexia Butow (ph.).
12              MS. BUTOW:  Good morning.
13              THE COURT:  Hi.  Good morning, everyone.
14              And Mr. Chong, just to let you know, Mr. Lipsky and I
15    worked together many years ago, I'd say more than a decade, at
16    a law firm together.  And I don't think that's going to be an
17    issue, given how much time has passed.  But I just wanted to be
18    up front with you, Mr. Chong, that I do know Mr. Lipsky from my
19    prior life at the law firm.  Not his law firm, but a different
20    law firm, so just so you're aware.
21              Mr. Chong, it's not going to be an issue for you?
22              MR. CHONG:  No, Your Honor.  But can you tell me if he
23    was a very -- let's see, very just top attorney back then as he
24    was in this case?
25              THE COURT:  Well, Mr. Lipsky, maybe I can speak for
```

4

Colloquy

1    you.  But seeing how you're cut from the same cloth and we grew

2    up in the same law firm together, if I have a reputation as

3    being a tough litigator then maybe it was from our prior

4    experience at the old law firm.  But maybe I can have Mr.

5    Lipsky speak to that on his own behalf.

6            MR. LIPSKY:  I think Lori Elman (ph.) would agree,

7    Your Honor, that Seyfarth Shaw trained us well.

8            THE COURT:  All right.  So before I get into the

9    proceeding, I do want to encourage the parties to consider

10   consenting to me for all purposes going forward.  In the event

11   that consent doesn't happen, what I need to then do is order a

12   transcript from today's hearing which will take time, also then

13   draft a report and recommendation for Judge Johnson which will

14   also take additional time.  And then give the parties time to

15   object if they want to, and then have Judge Johnson enter an

16   order, which essentially will all take a lot of time and

17   effort.  But I do want to be up front with the parties that as

18   of the submissions I've seen so far, I'm inclined to recommend

19   approving this settlement.  So I do want to let the parties

20   know that this whole process can be expedited if the parties do

21   consent to me.  So I leave that to the parties to decide.  But

22   hopefully, by the end of today or end of the day tomorrow, the

23   parties can make a decision on that and enter any appropriate

24   consent form on ECF if they so desire just so we can expedite

25   this entire process.

Colloquy

1        So with that I think we'll go into the Cheeks

2   proceeding.  I'll hear from plaintiff as to why they think the

3   Court should approve this settlement agreement.

4        MR. LIPSKY:  Thank you, Your Honor.  So this is a case

5   that involves a little beyond the typical wage-and-hour case

6   under Cheeks for minimum wage overtime as well as sexual

7   harassment claims under the New York City Human Rights Law.

8   The plaintiff worked for defendants from January 2017 to May

9   2018 as essentially a receptionist.  During that time as we

10  allege in the complaint, she was not lawfully paid, and the

11  owner of the clinic, Dr. Agustine, sexually harassed her more

12  than once.  Based on that, we assert the claims and the

13  complaint.  Defendants have vigorously denied those

14  allegations.

15       With the law suit being filed back May 2018, this case

16  has a long history, including some mediation conferences before

17  Magistrate Pollak.  We were ultimately referred out to the

18  court mediation program, and Pam Esterman was very instrumental

19  in reaching -- having the parties reach a settlement agreement

20  through a mediator's proposal, which was ultimately was 50,000

21  dollars to resolve all the claims.  We believe this settlement

22  satisfies all the factors for that, and also determined a

23  reasonableness of it.  And I could go through those factors now

24  if the Court wishes, or do you want me to fast forward to any

25  other part --


(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

1          THE COURT:  Very briefly.  I mean, I've read the

2    submissions, but one, just so the record is complete, very

3    briefly you can talk about those other factors.

4          MR. LIPSKY:  Sure.  Here, I think one of the most

5    important is that this is not a standard wage-and-hour case,

6    that again this involves sexual harassment claims, and that is

7    why this agreement, unlike typical agreements submitted under

8    Cheeks, has a general release that is not limited just to the

9    wage-and-hour claims because she -- plaintiff's alleged claims

10   that go beyond wage-and-hour.

11          One of the other major factors here is, plaintiff

12   calculates her damages to be at least 200,000 dollars,

13   including both from distress damages and the wage component.

14   And the settlement is a fraction of that, and from plaintiff's

15   perspective that is largely because of defendant's ability to

16   satisfy a full judgment.  And to test that, we obtained from

17   defendants their financial records, that includes tax records,

18   bank statements, financial statements for the corporate and

19   individual defendant.  In the settlement agreement, we had the

20   individual defendant affirm that the records they provided us

21   are complete and accurate.  And weighing that, we decided it

22   was a better decision to enter this agreement versus risk going

23   forward and get a judgment that would just be an empirical

24   victory.

25          The settlement is getting paid out over a lengthy time



Colloquy

1    period.  To secure that, there's a consent judgment.  So if

2    defendant defaults, the total amount unpaid accelerates, along

3    with a penalty provision that the corporate defendant and the

4    individual defendant will be personally liable on the consent

5    judgment.  So we think putting that together, the settlement

6    here is fair and reasonable.  It also satisfies the

7    requirements under Cheeks.  The agreement is public.  It was

8    filed on the ECF system.  The non-disparagement provision in

9    the agreement is properly tailored allowing the plaintiff to

10   discuss all truthful aspects of the case and the case

11   proceedings.  And the difference here from other Cheeks cases,

12   again that here there's a general release, but that's because

13   they're more than wage-and-hour claims which courts have

14   approved in similar circumstances.

15           As to the fee component, we are seeking one-third of

16   the total settlement amount plus expenses, which is routinely

17   approved.  The one-third fee application is a significant

18   discount of our Lodestar.  And the Lodestar was based on the

19   hourly rates of 400 dollars per hour for me, 300 dollars per

20   hour for Ms. Dostanitch our associate, and a 95-dollar hour

21   rate for our paralegal, which are rates -- I'm sure it was --

22   gets approved in this district.  And expenses are all

23   documented in the affidavit that we submitted, which includes

24   everything from an independent mental health expert report to

25   court filings.



Colloquy

1       And for those reasons, we believe, Your Honor, that

2   this court satisfies all factors for it to be reasonable and

3   the requirements under the Second Circuit decision in Cheeks.

4       THE COURT:  Thank you, Mr. Lipsky.

5       Mr. Chong, do you want to be heard?

6       MR. CHONG:  No, Your Honor.  I think that

7   representation is fair.  I'd do like to just put on the record

8   that these claims that the plaintiff asserted, we dispute them.

9   We claim they're false.  I know Mr. Lipsky stated that they

10  were, in fact, true, but they're disputed and they deny them.

11  So for what that's worth.

12      THE COURT:  All right.  Thank you.

13      Now having heard the parties' explanation today as to

14  why the settlement agreement is fair and reasonable under

15  Cheeks as well as taking into consideration the parties are in

16  submission seeking approval of the settlement agreement, I'm

17  prepared to recommend and find that the settlement agreement is

18  fair and reasonable for the following reasons.  I understand

19  that the plaintiff worked as a receptionist at a medical clinic

20  from approximately January 2017 until March of 2018.  In her

21  complaint she's alleging both wage-and-hour claims under New

22  York law and the FLSA, as well as a sex harassment claim under

23  the New York City Human Rights Law.  It was also represented

24  that the gross total potential recovery less interest or

25  liquidated damages is about 200,000 dollars.  I also understand

9

Colloquy

1    that defendant denies any wrongdoing, denies that plaintiff

2    worked the hours she claimed, and also denies the sexual

3    harassment claim.  I do note for the record that the parties

4    have reached a settlement agreement in the amount of 50,000

5    dollars.

6             I do want to note one correction, though.  I noticed

7    some of the papers talk about once there's recovery of the

8    settlement amount.  It appears, though, that the one-third for

9    the attorneys' fees is not based on the 50,000 dollars but

10   50,000 less expenses.  So I just want to make that clear for

11   the record.

12            So the considerations I've taken into account, one,

13   are the representations regarding defendants' precarious

14   financial position and real issues as to ability to pay and

15   ultimately collectability.  In terms of the monetary terms of

16   the settlement, it provides for an eighteen-month payout of

17   $2,777.78 per payout, with the total payout to plaintiff of

18   $25,780.32, part of which is allocated for the wage-and-hour

19   claim and the other part allocated toward emotional distress

20   damages for the sex harassment, the nonwage-and-hour claim.

21            I also note that the attorneys' fees sought in this

22   case is $12,891.05, which represents as I mentioned earlier

23   one-third of the settlement amount less expenses.  And the

24   expenses are in the amount of $11,328.49.  And the Court also

25   finds with approval that the payment to the plaintiff and the

Colloquy

 1   attorney at the same time in equal installments over that

 2   eighteen-month period of time is fair and reasonable.

 3          So in terms of my consideration of the fairness and

 4   reasonableness of the agreement, I do note that both parties

 5   identify certain potential litigation risks involved in this

 6   case, given real dispute as to the underlying facts and

 7   potential legal issues in this case warranting a settlement.

 8   As noted earlier, I do note that defendant has financial

 9   issues, which may pose collectability problems for the

10   plaintiff also necessitating in favoring a settlement at this

11   point in time.  I also note that the parties engaged in arms-

12   length negotiation with experienced counsel on both sides and

13   also with the assistance of one of our mediators, Pamela

14   Esterman.

15          I've reviewed the settlement agreement.  I do note

16   that there is a general release, and in typical wage-and-hour

17   claims those general releases are frowned upon.  But because

18   this case is different in the sense that you have a nonwage-

19   and-hour claim as well, courts have approved settlement

20   agreements with general releases in them.  As I noted earlier

21   that a portion of the payment being made to the plaintiff is

22   consideration for the settlement of a nonwage-and-hour claims

23   as well.  I also note that the settlement agreement contains a

24   non-disparagement provision.  While those are general

25   disfavored in FLSA cases, I do note for the record also that

Colloquy

1    there is a carveout in the non-disparagement provision with

2    language that has been approved by other courts as well in

3    Second Circuit.

4           Now turning to the attorneys' fee provision, as noted

5    plaintiffs are seeking one-third recovery for attorneys' fees

6    based on the 50,000-dollar settlement less expenses.  I've

7    compared that the Lodestar amount calculation, which courts

8    oftentimes do, and I do note without expressing any opinion as

9    to the reasonableness of the attorneys' fees or the billable

10   rate in this case that the Lodestar amount total based on 104

11   hours of work is about 34,000 dollars, which is far greater

12   than the attorneys' fees sought in this settlement agreement.

13   So based on that, I do find that the attorneys' fees request in

14   this case is fair and reasonable.

15          Quick question for you, Mr. Lipsky.  I'm assuming that

16   the attorneys' fees set forth in the settlement agreement is

17   the total amount that you will be getting in this case; is that

18   correct?  And you're not going to be recovering any additional

19   attorneys' fees beyond that?

20          MR. LIPSKY:  Correct, Your Honor.  The only condition

21   under which we would be entitled to additional fees is under --

22   if we have to execute and enforce a consent judgment.  Beyond

23   that limited circumstance, this is the total amount of fees

24   that we are seeking in this case.

25          THE COURT:  All right.  Thank you.


(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

1      So after having held this fairness hearing and having

2  reviewed the parties' submissions, I find that the settlement

3  reached here is fair and reasonable of plaintiff's claims.  And

4  considering the amount received, the issues of potential

5  liability that might have limited recovery, the fact that the

6  parties engaged in arms-length negotiations with experienced

7  counsel on both sides, and with the parties having sufficient

8  understanding as to the risks and benefits of proceeding with

9  litigation going forward, I also find that the attorneys' fees

10  and costs requested here are reasonable.  And I'm prepared to

11  recommend approval of the settlement agreement.

12      So typically if this case were in front of me, I would

13  ask the parties to file a stipulation of dismissal within

14  thirty days or so.  So I again encourage the parties to

15  consider consenting to me, so I can go ahead and approve the

16  settlement agreement once I get that consent immediately.

17  Otherwise, I'll have to wait until we get a transcript from

18  today's proceeding.

19      All right.  Anything else we need to address for

20  plaintiff?

21      MR. LIPSKY:  No, Your Honor.  Thank you.

22      THE COURT:  All right.  Anything else for defendant?

23      MR. CHONG:  Nothing, Your Honor.  Thank you.

24      THE COURT:  Okay.  With that, we're adjourned.

25      Thanks, everyone.  Have a nice day.

Colloquy

1          MR. LIPSKY:   Thank you, Your Honor.

2                         (Court is adjourned)

3                              *  *  *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



(973) 406-2250 | operations@escribers.net | www.escribers.net

1                        C E R T I F I C A T I O N

2

3           I, Amanda G. Stockton, court-approved transcriber, do

4    hereby certify the foregoing is a true and correct transcript

5    from the official electronic sound recording of the proceedings

6    in the above-entitled matter.

7

8

9

10                                              July 29, 2021

11   _____          _____

12   Amanda G. Stockton, CET-1323              DATE

13

14   eScribers, LLC
     7227 North 16th Street
15   Phoenix, AZ 85020
     www.escribers.net

16

17

18

19

20

21

22

23

24

25

